## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SHAWN ROBINSON,                       :
    Plaintiff,                    :
                                  :
v.                                    :    3:23cv1208 (MPS)
                                  :    consolidated with
                                  :    3:23cv1307:
NICK RODRIGUEZ, et al.,               :
    Defendants.                   :

## INITIAL REVIEW ORDER

The *pro se* plaintiff, Shawn Robinson, is a sentenced inmate confined at the Corrigan-

Radgowski Correctional Center ("Corrigan").[1] He filed this civil rights complaint under 42 U.S.C.

§ 1983 against eight DOC employees: Nick Rodriguez, Lieutenant Bowers, Lieutenant Nickols,[2]

Shift Commander Doe, Nursing Supervisor Phillips, Mental Health Staff Michelle, Grievance

Coordinator King, and Unit Staff M. Laghari.[3] He asserts violation of his rights under the United

States Constitution.[4] He seeks both damages and injunctive relief.

The Prison Litigation Reform Act requires that federal courts review complaints brought

by prisoners seeking relief against a governmental entity or officer or employee of a governmental

entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion

of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The Connecticut DOC website reflects Plaintiff was sentenced to fifty-five years of incarceration on September 4, 1987. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=148846.

[2] Plaintiff also refers to this defendant as Lieutenant Nichols. The Court refers to the defendant according to the spelling in the case caption.

[3] This case was consolidated with 3:23cv1307 after the Court determined that the complaints were essentially identical. *See* ECF Nos. 17, 18.

[4] Plaintiff requests the Court to exercise supplemental jurisdiction for unspecified state tort claims. The Court will not speculate what state tort law claims he asserts in this action.

granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

## I.     ALLEGATIONS

While the Court does not set forth all of the facts alleged in Plaintiff's consolidated complaint, it summarizes his basic factual allegations here to give context to its rulings below.

On September 11, 2020, Defendant Rodriguez and others transferred Plaintiff to Corrigan. Plaintiff alleges that his transfer was a reprisal and punitive action.

At Corrigan, Plaintiff was placed in the Alpha Unit, Cell A-222, where he was not provided his personal property or a mattress.

On September 12, 2020, Unit Staff Laghari notified the medical unit and Lieutenant Bowers that he wanted Plaintiff moved out of his unit due to Plaintiff's refusal to test for COVID-19. Plaintiff was thereafter removed to an Admitting and Processing ("A&P") holding cell, where he could not have personal property; was not provided with a mattress; and was denied showers, telephone calls, recreation, meals and access to the commissary and grievance forms for three days.

Plaintiff claims that he could not appeal his holding cell placement because Lieutenants Bowers and Nickols did not provide him with any formal hearing or notification prior to his holding cell placement. Plaintiff attempted to contact Grievance Coordinator King for assistance in obtaining and filing a grievance form, but she ignored him.

Plaintiff requested assistance for his health needs and living conditions from Mental Health Staff Michelle and Nursing Supervisor Phillips, but they acted with indifference to his mental and physical suffering and pain.

Whenever Plaintiff refused to take a COVID-19 test, Defendants and unidentified others

would punish him with placement in Alpha housing without any cell power or electricity. They would also permit Unit Staff Laghari to tamper with his mail.

On September 30, 2020, Unit Staff Laghari issued Plaintiff a false disciplinary report for threats. He issued this disciplinary report because Plaintiff had refused to take a COVID-19 test and because he did not want Plaintiff in his housing unit.

## II.   DISCUSSION

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton,* 126 F.3d 400, 405 (2d Cir. 1997) (citation omitted). The Court construes Plaintiff's complaint to raise concerns about violation of his rights under the First, Eighth, and Fourteenth Amendments.

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). This is also true for supervisory officials. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (To "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability."). Thus, the Court first considers whether Plaintiff has alleged any plausible claims.

### A.      Personal Involvement

Plaintiff names Shift Commander Doe as a defendant in the case caption but fails to allege any facts about Doe's conduct in the body of his complaint. The Court cannot speculate about how

Doe was involved in any constitutional violation. *See Darby v. Greenman*, 14 F.4th 124, 130 (2d Cir. 2021) ("[W]e are not free to speculate about unpleaded facts that might be favorable to the plaintiff.")   Accordingly, the Court dismisses any claims against Shift Commander Doe.

### B.    First Amendment Retaliation

To establish a claim for unlawful retaliation under the First Amendment, a plaintiff must prove that he engaged in speech activity that is protected by the First Amendment and that a governmental defendant took adverse action against the plaintiff because of the plaintiff's protected speech activity. *See Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (citing *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015)). Thus, to plead a First Amendment retaliation claim, an inmate must plausibly allege: (1) that he engaged in protected speech or conduct, (2) that the defendant took adverse action against the plaintiff, and (3) that the adverse action was the result of a retaliatory motive, i.e., that there was a causal connection between the protected conduct and the adverse action. *Dolan*, 794 F.3d at 294 (internal quotation marks and citation omitted).

Protected speech or activity includes filing a lawsuit, an administrative complaint, or a prison grievance. *See Dolan*, 794 F.3d at 294 ("[I]t is well established that retaliation against a prisoner for pursuing a grievance violates the right to petition [the] government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983." (internal quotation marks and citations omitted)); *Booth v. Comm'r of Corr.*, No. 3:19CV100 (MPS), 2019 WL 919580, at *5 (D. Conn. Feb. 25, 2019) ("Filing complaints and grievances is protected activity.") (citation omitted). Some courts in the Second Circuit have determined that verbal or oral complaints about the conduct of prison officials or conditions of confinement may constitute protected speech in the context of a First Amendment retaliation claim. *See, e.g.,*

4

*McIntosh v. United States*, No. 14 Civ. 7889 (KMK), 2016 WL 1274585, at *26 (S.D.N.Y. Mar. 31, 2016) (collecting cases). Likewise, some district courts in this Circuit have determined that an inmate's speech related to medical needs falls within the ambit of First Amendment protection. *Dunbar v. Dep't of Correction*, No. 3:22CV627 (JAM), 2023 WL 143164, at *8 (D. Conn. Jan. 10, 2023).

"An adverse action is defined as 'retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019). In order to allege causation, the inmate must state facts "suggesting that the protected conduct was a substantial or motivating factor in the [defendant's] decision to take action against [him]." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)). "Some of the facts often used to determine retaliatory motive may include (1) temporal proximity between the protected conduct and the alleged retaliatory act, (2) the prisoner's prior good disciplinary record, (3) a finding of not guilty at the disciplinary hearing, and (4) statements by the officials showing motivation." *Ramos v. Semple*, No. 3:18CV1459 (VAB), 2019 WL 2422875, at *2 (D. Conn. June 10, 2019).

The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Id.* at 295.

Plaintiff first claims that Defendant Rodriguez transferred him to Corrigan as a form of punishment or reprisal. But Plaintiff alleges no facts to suggest that Rodriguez transferred him in

response to any constitutionally-protected conduct or speech. Accordingly, the Court must dismiss a claim of First Amendment retaliation against Rodriguez as not plausible.

Plaintiff makes two claims of retaliation by Unit Staff Laghari based on his refusal to take a COVID-19 test. The Court assumes for purposes of this initial review that Plaintiff's expression to refuse a COVID-19 test was protected under the First Amendment. But neither of Plaintiff's two claims against Unit Manager Laghari satisfy all elements required for a retaliation claim.

Plaintiff alleges that Laghari made a request for his removal from the Alpha Unit after he refused to take a COVID-19 test. But no allegations indicate that Laghari was aware that Plaintiff would be placed in the A&P holding cell under conditions more restrictive than his confinement in the Alpha Unit. Thus, Plaintiff's allegations do not support an inference that Laghari made his request to retaliate against Plaintiff for his protected conduct by subjecting him to adverse conduct. *See Shelton v. CO Payne*, No. 3:21CV637 (KAD), 2021 WL 3190398, at *7 (D. Conn. July 28, 2021) (dismissing First Amendment claim as not plausible absent allegations showing that any defendant sought to punish or retaliate against Plaintiff for exercising his First Amendment rights).

Plaintiff also claims that Laghari issued him a false disciplinary report for threatening after he refused to take a COVID-19 test. Plaintiff does not, however, allege any facts to suggest that he suffered any harm as result of disciplinary report. *See Francis v. Carusso*, No. 3:22CV1191 (CSH), 2022 WL 16716172, at *6 (D. Conn. Nov. 4, 2022) (finding no adverse action based on false disciplinary report where plaintiff failed to allege that he was found guilty or was suffered any disciplinary action). "[N]o cases in this Circuit hold that the filing of a misbehavior report is, without additional punishment, sufficient to find an adverse action." *Vidal v. Valentin*, No. 16-Cv-5745(CS), 2019 WL 3219442, at *8 (S.D.N.Y. July 19, 2019) (noting "courts require a showing

of additional punishment above the filing of a misbehavior report to find an adverse action."). Thus, the Court concludes that Plaintiff has not alleged plausible First Amendment retaliation claims against Unit Staff Laghari.

Finally, Plaintiff alleges that unspecified defendants punished him by placing him in the Alpha housing with no electricity or power and by allowing Laghari to tamper with his mail. Consistent with the Second Circuit's instruction to approach retaliation claims with some measure of skepticism, the Court will not permit Plaintiff to proceed on a First Amendment retaliation claim based upon his wholly conclusory assertion that unspecified defendants acted with retaliatory animus after he refused to take a COVID test.

Accordingly, Plaintiff has not alleged any plausible claims of First Amendment retaliation.

**B.     Fourteenth Amendment Procedural Due Process**

Plaintiff raises Fourteenth Amendment procedural due process concerns arising from the failure of Lieutenants Bowers and Nickols to afford him a hearing or notice prior to his placement in the A&P holding cell.

To state a claim for violation of his right to procedural due process, a plaintiff must show that he had a protected liberty interest and that he was deprived of that interest without being afforded due process of law. *Sandin v. Conner*, 515 U.S. 472 (1995). In *Sandin*, the Supreme Court reexamined the circumstances under which state prison regulations afford inmates a liberty interest protected by the Due Process Clause. *Id.* at 474. The Court explained that for prisoners, a liberty interest warranting due process protection "will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection

by the Due Process Clause of its own force ... nonetheless imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

For purposes of initial review, the Court assumes that Plaintiff's alleged conditions in the A&P holding cell—although of short duration—may support a liberty interest. Thus, the Court considers whether Plaintiff was afforded the process due prior to his placement.

The level of procedural protection required depends on the purpose of the hearing. *Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987). For an administrative proceeding, the inmate is entitled only to "some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding" the matter. *Hewitt v. Helms*, 459 U.S. 460, 476 (1983). By contrast, for a disciplinary proceeding, an inmate is entitled to advance written notice of the charge, adequate time to prepare a defense, a written statement of the reasons for the disciplinary action taken, and a limited opportunity to present witnesses and evidence in his defense. *See Wolff v. McDonnell*, 418 U.S. 539, 561–70 (1974).

Here, Plaintiff alleges that he was not provided any process at all prior to his restrictive placement in the A&P holding cell. Thus, the Court will permit Plaintiff to proceed on a Fourteenth Amendment procedural due process claim against Lieutenants Bowers and Nickols in their individual capacities for further development of the record.

### C.     Eighth Amendment Deliberate Indifference to Conditions of Confinement

The Eighth Amendment, which forbids cruel and unusual punishment, has been interpreted to prohibit conditions in state prisons that subject incarcerated individuals to the "wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). In order to constitute an Eighth Amendment violation, however, a condition must be "sufficiently serious"

such that it results in a deprivation of "the minimal civilized measure of life's necessities." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted). Even where a condition meets that high bar, a plaintiff seeking to hold prison officials liable under the Eighth Amendment must additionally allege that in subjecting inmates to the particular condition, "the defendant official acted with a sufficiently culpable state of mind.... such as deliberate indifference to inmate health or safety." *Id.* (citation omitted). Those two requirements—a sufficiently serious condition and culpable state of mind—are often referred to as the "objective" and "subjective" elements required for stating a plausible Eighth Amendment claim. *See, e.g., Brock v. Wright*, 315 F.3d 158, 162-64 (2d Cir. 2003).

Conditions are objectively serious enough to implicate the Eighth Amendment where, alone or in combination, they produce "deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). The deprivation must be significant; although the Constitution does not permit "inhumane" prisons, nor does it "mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). There is no bright-line rule or "static test to determine whether a deprivation is sufficiently serious; the conditions themselves must be evaluated in light of contemporary standards of decency." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012). The length of time an inmate is subjected to the condition is relevant in determining whether it is sufficiently serious. *See Rhodes*, 452 U.S. at 37 ("the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards."). Generally, a temporary or limited exposure to a condition does not amount to an Eighth Amendment violation. *White v. Smith*, No.  9:17-CV-1094, 2021 WL 5989600, at *8 (N.D.N.Y. Oct. 15, 2021); *Beauvoir v. Falco*, 345 F. Supp. 3d 350, 374 (S.D.N.Y.

2018) ("Deprivations of such mild duration and severity do not rise to the level of being considered cruel and unusual treatment under the Constitution."); *Ford v. Phillips,* No. 05 Civ. 6646, 2007 WL 946703, at *9 (S.D.N.Y. Mar. 27, 2007) (holding that, as a matter of law, minor and temporary deprivations of property, showers and recreation do not violate the Eighth Amendment).

1.     Cell A-222

Plaintiff claims that he was deprived of his personal property and a mattress in Alpha Unit Cell A-222.

Plaintiff has not alleged facts to show that his inability to retain personal property gave rise to a deprivation of a basic human need. *See Jusino v. Quiros*, No. 3:21CV620 (SRU), 2021 WL 5111908, at *9 (D. Conn. Nov. 3, 2021) (noting that restriction on Plaintiff's retention of personal property did not constitute a deprivation of a basic human need). Thus, Plaintiff's complaint fails to raise an Eighth Amendment claim arising from his inability to retain personal property in cell A-222.

For initial pleading purposes, Plaintiff states a plausible Eighth Amendment deprivation arising from the failure to provide him a mattress in Cell A-222. *See Bell v. Luna*, 856 F. Supp. 2d 388, 398 (D. Conn. 2012) (noting "deprivation of bedding that is unnecessary from a security standpoint is unconstitutional") (citing *Blissett v. Coughlin,* 66 F.3d 531, 537 (2d Cir.1995)). With respect to the subjective element, Plaintiff's allegations are sufficient to suggest that Unit Staff Laghari was aware of his conditions but took no action to provide him a mattress. Thus, Plaintiff may proceed against on an Eighth Amendment claim for deliberate indifference to his need for a mattress against Laghari in his individual capacity.

2.     A&P Holding Cell

Plaintiff alleges that he was unable to retain property, had no mattress, and was denied showers, telephone calls, recreation, meals, and access to the commissary for three days during his confinement in the A&P cell. For the reasons, previously explained, the Court concludes that Plaintiff does not allege a plausible Eighth Amendment claim based on his personal property deprivation. But Plaintiff alleges a plausible Eighth Amendment deprivation based on his lack of a mattress. The Court will permit Plaintiff to proceed on his individual capacity claims for damages against Lieutenants Bowers and Nickols, who were plausibly involved with any deliberate indifference to Plaintiff's mattress deprivation. The Court also considers whether Plaintiff was subjected to additional Eighth Amendment deprivations in the A&P holding cell.

a.     Meal Deprivations

The Eighth Amendment requires that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the inmate's health. *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983). Crediting Plaintiff's allegations as true, Plaintiff's complaint suggests his deprivation of his basic human need for food for three days. The Court concludes that this condition was sufficiently severe to support an Eighth Amendment claim. Accordingly, the Court will permit Plaintiff to proceed on his claims against Lieutenants Bowers and Nickols in their individual capacities for further development of the record.

b.     Showers

Inmates have a right to sanitary living conditions and the necessary materials to maintain adequate personal hygiene. *See Walker v. Schult,* 717 F.3d 119, 127 (2d Cir. 2013) (citing cases for the proposition that "the failure to provide prisoners with toiletries and other hygienic materials may rise to the level of a constitutional violation"). But courts have held that occasional or

11

temporary deprivations of hygiene items do not constitute deprivations of basic human needs to meet the objective component of the Eighth Amendment. *See Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003) (deprivation of "toiletries for approximately two weeks—while perhaps uncomfortable" did not violate Eighth Amendment); *Conley v. Aldi*, No. 3:18CV824(VAB), 2020 WL 1333501, at *5 (D. Conn. Mar. 23, 2020) (holding that inability to "practice" personal hygiene for a three-day period and a four-day period failed to state Eighth Amendment violation and noting that occasional or temporary denials of hygiene items does not constitute deprivation of basic human need).

Plaintiff's allegations suggest that he was subjected to only three days without a shower while he was held in the A&P cell. As Plaintiff has not alleged facts to show that this temporary deprivation of hygiene was severe, the Court must dismiss his Eighth Amendment claim based on denial of showers as not plausible.

c.     Recreation

The Second Circuit has recognized that the Eighth Amendment requires prison inmates to be allowed some out-of-cell exercise. *Williams v. Greifinger*, 97 F.3d 699, 704 n.5 (2d Cir. 1996); *Edwards v. Quiros*, 986 F.3d 187, 195 (2d Cir. 2021) (noting that the right at issue is for "some opportunity to exercise"). However, prison officials may limit the right to out-of-cell exercise "where there is a valid safety exception or certain unusual circumstances." *Williams*, 97 F.3d at 704 (holding that segregated confinement for long periods does not violate Eighth Amendment if inmate is provided opportunity for exercise) (citations omitted).

District courts generally hold that a short-term or temporary deprivation of exercise is not an objectively serious deprivation. *See Abreu v. Farley*, No. 6:11-CV-06251 EAW, 2019 WL

1230778, at *18 (W.D.N.Y. Mar. 15, 2019) (finding three-day denial of access to recreation did not support an Eighth Amendment claim) (citing cases); *Beauvoir*, 345 F. Supp. 3d 350, 374 (S.D.N.Y. 2018) (deprivation of recreation for four to five days did give rise to Eighth Amendment claim); *Torrez,* No. 3:17CV1232 (SRU), 2018 WL 2303018, at *6 (D. Conn. May 21, 2018) (allegation of ten-day denial of recreation did not suggest "severe deprivation"). As Plaintiff's complaint suggests he was denied exercise for three days, Plaintiff has not plausibly alleged an exercise deprivation of constitutional dimension. Accordingly, the Court must dismiss as not plausible Plaintiff's claim of Eighth Amendment violation arising from his denial of recreation while he was in the A&P holding cell for three days.

      d.      Telephone Calls[5]

      Plaintiff alleges that he was denied telephone calls during his three-day A&P confinement. But plaintiff alleges no facts to show how a three-day limitation on his access to telephone calls deprived him of a constitutional right.

      An inmate has no Eighth Amendment right to visitation or to make social telephone calls. *See Overton v. Bazzetta*, 539 U.S. 126, 136-37 (2003) (disciplinary regulation that subjected some inmates to ban of at least two years on *all* visitation, including non-contact visits, exclusive of clergy and attorneys, did not violate the Eighth Amendment, though some more permanent or arbitrary ban might); *Riddick v. Arnone*, No. 3:11cv631(SRU), 2012 WL 2716355, at *3, 6 (D. Conn. July, 2012) (dismissing claim that prison officials denied Plaintiff access to telephone on

---

[5] To the extent Plaintiff asserts that a denial of his telephone use violates his First Amendment rights, Plaintiff's allegations are not sufficient to suggest that he was denied telephone usage without penological reason. *Gomez v. Dep't of Corr.*, No. 3:20CV958 (JAM), 2020 WL 6526108, at *3 (D. Conn. Nov. 4, 2020) (concluding Plaintiff had not adequately alleged First Amendment violation where Plaintiff's claim was conclusory and failed to allege sufficient facts concerning the context of the denial); *Joseph v. Annucci*, No. 18-CV-7197 (NSR), 2020 WL 409744, at *6 (S.D.N.Y. Jan. 23, 2020) ("allegations of infringement of rights must have some specificity.").

ground that inmates do not have a "constitutional right to unrestricted telephone use" and Plaintiff did not allege that he was barred from communicating through mail during period when he could not use telephone); *Griffin v. Cleaver*, No. 3:03CV1029 (DJS)(TPS), 2005 WL 1200532, at *6 (D. Conn. May 18, 2005) (inmate had "no constitutional right to telephone use, social visits and commissary privileges").

Accordingly, Plaintiff's complaint fails to state any violation of his rights based on his lack of access to telephone calls for three days. *See* 28 U.S.C. § 1915A(b)(1).

e.   Commissary

Plaintiff also complains that he was denied access to the commissary. But inmates have no constitutional right to "purchase items from the prison commissary." *Vega v. Rell*, No. 3:09-CV-737 VLB, 2011 WL 2471295, at *25 (D. Conn. June 21, 2011) (citing cases); *Baltas v. Erfe*, No. 3:19CV1820 (MPS), 2020 WL 1915017, at *26 (D. Conn. Apr. 20, 2020) (dismissing Eighth Amendment claim based on restrictions to commissary purchasing). Thus, the Court concludes that Plaintiff has not plausibly alleged a violation of his constitutional rights based on his inability to access the commissary while confined in the A&P holding cell.

### D.   Eighth Amendment Deliberate Indifference to Medical/Mental Health Needs

To state an Eighth Amendment claim for deliberate indifference to his medical needs, Plaintiff must allege facts showing both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that is capable of causing death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003). Subjectively, the defendant must

have been "subjectively reckless" by denying the plaintiff medical care. *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under Section 1983. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Nor does a disagreement over the treatment provided show deliberate indifference. *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (citing *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)).

Here, Plaintiff alleges Nursing Supervisor Phillips and Mental Health Staff Michelle were indifferent to his mental and physical pain and suffering. But he has not alleged what physical or mental medical conditions he suffered from that required their attention. Nor has he alleged facts describing how they acted with deliberate indifference to his serious medical or mental health needs. Because Plaintiff alleges that Phillips and Michelle acted with deliberate indifference in wholly conclusory terms, the Court cannot assess whether Plaintiff was subject to an Eighth Amendment violation based on indifference to his serious medical or mental health needs. Accordingly, the Court must dismiss Plaintiff's Eighth Amendment claim against Defendants without prejudice.

### E.      Mail Interference

Plaintiff claims that Unit Staff Laghari tampered with his mail.

"It is well-settled that the First Amendment serves to protect the flow of information to prisoners; thus, any limitations on prisoner access to information must be reasonably related to a legitimate penological interest." *Rapp v. Barboza*, No. 9:13-CV-0599 (NAM/DEP), 2016 WL 4223974, at *7 (N.D.N.Y. July 19, 2016) (citing *inter alia Turner v. Safley*, 482 U.S. 78, 89-90 (1987)); *see also Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("[A] prisoner's right to the

free flow of incoming and outgoing mail is protected by the First Amendment."). Non-legal mail is "afforded less protection than legal mail," and "an isolated failure to mail an inmate's [non-legal] letter does not state a constitutional violation." *Edwards v. Horn*, No. 10 Civ. 6194, 2012 WL 760172, at *7 (S.D.N.Y. Mar. 8, 2012) (citations omitted). "To establish a claim for interference with regular, non-legal mail in violation of the First Amendment, an inmate 'must show a pattern and practice of interference that is not justified by any legitimate penological concern.'" *Singleton v. Williams*, No. 12-CV-2021, 2014 WL 2095024, at *3 (S.D.N.Y. May 20, 2014) (citation omitted).

Plaintiff's complaint fails to provide any specific facts about interference with his mail. He does not allege facts to reflect that Laghari tampered with his legal mail or that he engaged in more than isolated instances of non-legal mail interference. Thus, the Court concludes that Plaintiff has not alleged a plausible First Amendment violation based on mail tampering.

## F.    Deprivation of Constitutional Right to Court Access

Plaintiff alleges that he did not have access to grievance forms while in the A&P holding cell and that Grievance Coordinator King failed to provide him any assistance in obtaining and filing his grievances. But prison grievance procedures "do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment." *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003); *see also Cancel v. Goord*, No. 00-CV-02042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("[T]he refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a claim under § 1983.").

To the extent he asserts that his grievance deprivation resulted in a denial of his

16

constitutional right of court access, Plaintiff has not alleged a plausible claim. The First Amendment to the United States Constitution (in conjunction with the other constitutional provisions) guarantees prisoners "the right of access to the courts." *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Morello v. Hames*, 810 F.3d 344, 346 (2d Cir. 1987). But, to prevail on a § 1983 access to the court claim, an inmate-plaintiff must demonstrate that a prison official "actually interfered with his access to the courts or prejudiced an existing action." *Tafari v. McCarthy*, 714 F. Supp. 2d 317 (N.D.N.Y. 2010). To state a claim for denial of access to the courts, an inmate is required to demonstrate that he suffered an actual injury as a result of the conduct of the defendants. *Lewis*, 518 U.S. at 351-53. To establish an actual injury, an inmate must allege facts showing that the defendant took or was responsible for actions that hindered his efforts to pursue a "nonfrivolous" legal claim. *Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002) ("Whether access claim turns on a litigating opportunity yet to be gained or an opportunity already lost... plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim" that he sought to pursue or seeks to pursue in court) (citation omitted); *see Lewis*, 518 U.S. at 353 (suggesting that the injury requirement of an access to courts claim is satisfied if an "inmate could demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." (footnotes omitted)).

Here, Plaintiff has not alleged that any interference with his right to court access frustrated a nonfrivolous claim pursued in court. Accordingly, any access to court claims must be dismissed as not plausible.

### G.    Official Capacity Claims

Plaintiff sues Defendants in their official capacities and seeks damages and injunctive relief. To the extent he seeks damages against Defendants, who are state employees, in their

17

official capacities, such claims must be dismissed as barred by the Eleventh Amendment. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

In *Ex parte Young*, 209 U.S. 123 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155–56; *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005). "A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007).

Plaintiff's complaint fails to raise any inference that he is subject to any continuing or ongoing constitutional violation. Accordingly, Plaintiff has not alleged any plausible claim for official capacity relief.

## ORDERS

The Court enters the following orders:

The case shall proceed on Plaintiff's individual capacity claims for damages for:

(1) Fourteenth Amendment procedural due process violation against Lieutenants Bowers and Nickols;

(2) Eighth Amendment violation against Lieutenants Bowers and Nickols for deliberate indifference to Plaintiff's need for a mattress and meals during his confinement in the A&P holding cell;

(3) Eighth Amendment violation against Unit Staff M. Laghari for his deliberate indifference to Plaintiff's mattress deprivation during his confinement in Cell A-222.

All claims against Defendants Nick Rodriguez, Shift Commander Doe, Nursing Supervisor Phillips, Mental Health Staff Michelle, and Grievance Coordinator King are DISMISSED. All official capacity claims are DISMISSED.

The Court enters the following additional orders.

**Plaintiff has two options as to how to proceed in response to this Initial Review Order:**

(1) If Plaintiff wishes to proceed immediately **only** on the claims set forth in items one through three above against Defendants Lieutenants Bowers, Lieutenant Nickols, and Unit Staff M. Laghari, he may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket on or before **January 11, 2024**, informing the Court that he elects to proceed with service as to the claims set forth in this paragraph. The Court will then begin the effort to serve process on Defendants named in items one through three above in their individual capacities as described above.

(2) Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an amended complaint by **January 16, 2024**. An amended complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made in the original complaint in evaluating any amended complaint. The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file an amended complaint, the complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Plaintiff by **January 16, 2024**, the Court will presume that Plaintiff wishes to proceed on the complaint as to the claims permitted to go forward

in this Initial Review Order, **and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future**.

**Changes of Address.** If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c) provides that he **MUST** notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendants or counsel for Defendants of his new address.

_____/s/_____
Michael P. Shea
United States District Judge

**SO ORDERED** this 27th day of December 2023, at Hartford, Connecticut.

20